**MEMPHIS NATURAL GAS CO. v. GULLY,**
**State Tax Collector, et al.**
No. 450.

District Court, S. D. Mississippi, Jackson Division.

Sept. 17, 1934.

170

Green, Green & Jackson, of Jackson, Miss., for plaintiff.

Walter Sillers, Jr., of Rosedale, Miss., Edward W. Smith, of Clarksdale, Miss., and W. E. Gore, of Jackson, Miss., for defendants.

HOLMES, District Judge.

There is presented by this bill and application for preliminary injunction a similar claim of tax exemption to that just decided in Interstate Natural Gas Company v. J. B. Gully, State Tax Collector (D. C.) 8 F. Supp. 174. This plaintiff is a foreign corporation which applied for, and was granted, a five-year exemption from ad valorem taxation. The exemption was approved by the Attorney General of Mississippi as being in conformity to its laws and Constitution. On the faith of the grant, which has never been repealed, the plaintiff entered the state as "a new enterprise of public utility," and expended several millions of dollars in tangible property necessary to the operation of the service which it is performing. The right of exemption has never been questioned by legislative act or resolution, and was respected by the executive officers of the state from June 11, 1928, until the 4th day of November, 1932, when, upon a shift in the office of state tax collector, the present incumbent notified the tax commission that plaintiff's property had escaped taxation by reason of not being assessed for the years 1929, 1930, and 1931, and directed the commission to assess said property for each of said years at a valuation of $2,703,710. The plaintiff, on notice, appeared before the commission and objected to the assessment, claiming an exemption from June 11, 1928, until June 11, 1933. After an all-day hearing, the commission announced its intention to make the assessment final, but, before the entry was made, a temporary restraining order, forbidding it, was issued by this court on the application of the defendant.

The bald contention of the gas company is that its property is not subject to taxation, because it falls within a specially exempted class under a general law sanctioned by constitutional provision, and that the Attorney General, acting under such law and the Constitution, has approved the same. The contention of the defendants is that the plaintiff is not a member of the exempted class within the intent of the Legislature, and that, if the act should receive such construction, it would be void as violative of section 182 of the state Constitution, which forbids the surrender or abridgement by the state of the power to tax corporate property. The plaintiff replies that there is an exception in section 182 which permits the Legislature to "grant exemption from taxation in the encouragement of manufactures and other new enterprises of public utility," which elicits

the rejoinder that plaintiff is not a public service corporation, and therefore is not a "public utility." To the argument that a wagon factory and like "manufactures" are not public service corporations, and that the word "other" before "new enterprises of public utility" precludes such a construction, the suggestion is made that such word "other" should be "dropped out" of the Constitution, "because it does not make sense, and only leads to conflict and confusion in an attempt to construe the section." In the case of Interstate Natural Gas Company v. J. B. Gully, 4 F. Supp. 697, I have expressed the view that the court was not justified in thus eliminating from the fundamental law the word "other" to defeat the claimed exemption from state and county taxes. I shall not review the reasons therein given further than to say that I find nothing in the Constitution, statutes, or decisions of the state of Mississippi to indicate that the proffered exemptions were intended for domestic corporations only. It should be remembered that the exemption was from ad valorem taxation, and that its primary purpose was to induce foreign capital to come into the state. It could not matter much whether it belonged to a domestic or foreign corporation, to a resident or non-resident individual; but I rather suspect that the bait was held out less for the resident than the nonresident, as the former's capital in the majority of instances was already invested within the state while the latter's was not. Neither was it vital whether the new capital was invested in property used in intrastate or interstate commerce. Either business would give people employment, and the property therein used would in each instance be subject to ad valorem taxation after the five-year exemption period had expired. I further find that both the administrative officers and the courts of the state have allowed the exemptions to residents and nonresidents alike, and that such was the contemporaneous construction of the act even in this case. In the Interstate Nat. Gas Co. Case the period of exemption had expired (and in this case three years of it) before it was questioned. If it was a contract, it was an executed one; if it was a nudum pactum, it was a completed transaction; if it was a bounty, it was construed by the Attorney General to entitle the plaintiff to the exemption claimed, and this decision by the state's highest law officer, specially designated by statute to exercise a discretion with regard thereto, has never been recalled, reviewed, or questioned by him or any of his several successors in office.

■ There is this subordinate question not present in the Interstate Nat. Gas Co. Case. The tax collector claims that no exemption was granted from levee taxes, regardless of the outcome of the controversy over state and county taxes; but a decision with respect to this matter may properly await the final hearing of the case. At this time it is my purpose to refer again to the question of comity and, without repetition, to deal with it from a somewhat different aspect. It appears that there is no substantial assailment by the plaintiff of a state statute, but that its best reliance for exemption of its property from taxation is upon the law and Constitution of the state. That there is a controversy in this case over the liability of corporate property for taxation, or over the right of tax exemption, involving nearly a half million dollars, is beyond disputation; that it may become justiciable at some stage is clear, but whether that stage has been reached at this time, and, if not, when it will be reached under the procedure in Mississippi for assessment of property for taxation, is one of the questions which the attorneys have debated at length. There is doubt and confusion in the decisions. This confusion is worse confounded by House Bill No. 960, enacted by the Mississippi Legislature during the pendency of this litigation, approved March 31, 1934 (Laws 1934, c. 206), providing for appeals from assessments by the tax commission to the judge of the circuit court. The defendants contend that the judge becomes an appellate assessor, and that the proceeding before him is essentially administrative. Such a construction would render the act unconstitutional and void. The circuit judge is a judicial officer, and administrative duties may not be conferred upon him except when incidental and essential to the performance of his judicial functions. In Yazoo & M. V. R. Co. v. Adams, 81 Miss. 90, 32 So. 937, 942, it was held that railroad assessors had no power to determine a question of exemption from taxation involving the constitutional authorization of the Legislature, because such question "pertains to the highest and most important exercise of the judicial functions." In The City of Jackson v. Preston, 93 Miss. 366, 47 So. 547, 21 L. R. A. (N. S.) 164, an exemption was judicially upheld in an independent action at law, although the taxpayer did not appeal from the assessment by the board of supervisors. In North American Old Roman Catholic Diocese v. Havens, 164 Miss. 119, 144 So. 473, 84 A. L. R. 1313, the court held that, church property not being

absolutely exempt from taxation, the owner should appear before the board of supervisors and present his objections, and, if aggrieved at the decision of the board, should appeal to the circuit court where the case might be tried de novo. Not having done so, relief in equity was denied. This case can be reconciled with the one following only on the ground that the point was not made. In Chandler v. Executive Committee on Education, 165 Miss. 690, 146 So. 597, the court held that a religious society's land used in connection with a college was not taxable merely because platted and subdivided into lots for future sale, and affirmed a decree of the chancery court perpetually restraining a sale for taxes. Section 420 of the Mississippi Code of 1930 provides: "The chancery court shall have jurisdiction of suits by one or more taxpayers in any county, city, town, or village, to restrain the collection of any taxes levied or attempted to be collected without authority of law." Under this section it was held that the remedy of a taxpayer aggrieved by the action of the board of supervisors in increasing the assessment of his property ·is by an appeal to the circuit court; and, failing to pursue this course, he cannot obtain relief in a court of chancery (Anderson v. Ingersoll, 62 Miss. 73) ; but, where part of the tax is legally assessable, and that part is tendered and refused, it was held in City of Meridian v. Ragsdale, 67 Miss. 86, 6 So. 619, that a bill to enjoin the collection of the excess is maintainable, without tendering therewith the part that is legal. In Browning v. Matthews, 73 Miss. 343, 18 So. 658, it was held that the chancery court will enjoin a tax levied by the board of supervisors in a matter over which the board has no jurisdiction. Under the same statute, in McFarland v. Goins, 96 Miss. 67, 50 So. 493, it was held that the collection of taxes under a law creating a school for white children and making no provision for colored children may be enjoined. Another case where the collection of taxes was enjoined was Morgan v. Wood, 140 Miss. 137, 106 So. 435. The above Code provision is the only authority of state chancery courts to enjoin the collection of taxes. Purvis v. Robinson, 110 Miss. 64, 69 So. 673. There is no conflict in the state decisions that the chancery court will not enjoin a proceeding to assess property, but the decisions above cited deal with property where the assessment has been made. They are useful here to show that the state courts construe the administrative remedy as exhausted without an appeal to the circuit court from an assessment by the administrative board.

I realize that state statutes, or decisions construing them, are not effective to enlarge or contract the equitable jurisdiction of the federal court, except in instances where a new equitable right or remedy has been created, and I am not intimating that said section 420 (Miss. Code 1930) enlarges or restrains equitable jurisdiction of the federal courts, but we are now trying to reconcile state decisions and arrive at a matter of state law; i. e., whether the administrative remedy is ended with the tax commission or whether an appeal to the judge of the circuit court is required. Certainly comity as to local administrative remedies does not require more of the federal courts than state practice requires of its own courts, and, if injunctive relief in a state court may be granted from an assessment by an administrative board without appealing to the circuit court, or to the judge thereof, comity will not require a federal court to delay equitable jurisdiction until such appeal has been taken and disposed of; and this is equally true if there is conflict in the state decisions, such as we have noted.

In the case of First National Bank v. Gildart (C. C. A.) 64 F.(2d) 873, the plaintiff had a plain, adequate, and complete remedy at law to pay the tax and sue to recover it. Instead of doing so, it appealed to the circuit court from the order of assessment by the board of supervisors, and, while the suit was pending there, filed a bill in equity in the federal court to enjoin the proceedings to collect the tax. There was no multiplicity of suits, no insolvency of sheriffs and tax collectors, with inadequate bonds and insolvent sureties. There was but one suit necessary. Having held that there was no equitable jurisdiction, the opinion went on to say that the suit was premature because the proceedings in the circuit court, while partly judicial, were essentially administrative, and therefore the plaintiff had not exhausted its administrative remedy. This language is thought to be out of harmony with the Constitution, laws, and decisions of the state of Mississippi, and contrary to the later case of City Bank Farmers' Trust Company v. Schnader, 291 U. S. 24, 54 S. Ct. 259, 261, 78 L. Ed. 628, wherein the court said, after distinguishing some of the very cases relied on to support the above language: "But other decisions make it clear that, while the action of the appraiser in a case like the present is purely administrative, the function of the court upon appeal is judicial in character, if, when the case is brought into the court, the

commonwealth becomes plaintiff and the taxpayer defendant, and the action is tried as an ordinary action, resulting in a judgment which is final and binding on the parties, subject only to appeal to a higher state court, as permitted by the act. This renders the proceeding judicial, and gives it the character of a suit or action at law." In Commissioners of Road Improvement District v. St. Louis S. W. R. Co., 257 U. S. 547, 42 S. Ct. 250, 253, 66 L. Ed. 364, Judge Taft says: "An administrative proceeding transferred to a court usually becomes judicial, although not necessarily so," citing Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150, to illustrate cases which do not necessarily become judicial. This is one of the cases relied on in the Gildart Case, and is one of the very cases distinguished in City Bank Farmers' Trust Company v. Schnader as having under consideration statutes which "delegated legislative power of regulation to an administrative body and vested a revisory power in a court."

Proceeding, therefore, upon the postulate that the plaintiff in this case has no plain, adequate, and complete remedy at law because of special circumstances, and that the action of the tax commission in order to be final awaits only the formal entry of the order making the assessment, which is sure to follow if the injunction is denied, the above case of City Bank Farmers' Trust Company v. Schnader further holds that the plaintiff ought not to be required to go through the idle form of dismissing the bill and filing it over again. In that case, as here, it was claimed that the bill was prematurely filed, and on that question the court said:

"The question then is whether the bill was prematurely filed. In view of what has been said, the appellant's cause of action in equity will not, strictly speaking, arise until an appraisement is made and certified to the department of revenue and notice of the fact is given appellant. However, in view of the allegations of the bill, we are not inclined to hold the suit premature. The bill charges that the secretary of revenue has refused to issue a waiver of tax, and that the Attorney General has notified the appellant and the state's appraiser the property is subject to the tax, and the appellant's claim for exemption will be denied. The commonwealth's law officers plainly intend to perform what they consider their duty, and will, unless restrained, cause the assessment and imposition of the tax. The action, the legality of which is challenged, thus appears sufficiently im-

minent and certain to justify the intervention of a court of equity. Compare Pennsylvania v. West Virginia, 262 U. S. 553, 592, 43 S. Ct. 658, 67 L. Ed. 1117, 1130, 32 A. L. R. 300. Moreover, no purpose would be served by dismissing the bill, if, as we hold, the moment the proposed assessment is made another suit may be instituted in the federal court.

"The decree of the District Court is reversed and the cause remanded, with instructions to reinstate the bill and proceed to a hearing upon the merits."

Effort is made to distinguish this case because there was no adequate remedy at law in Pennsylvania to pay the tax and sue to recover it, and in Mississippi such remedy is held to exist under the recent case of Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447. While such is true in Mississippi in the ordinary case of an illegal tax, the distinction disappears in this case where there are special circumstances giving rise to the necessity of equitable relief. In this case relief by bill in equity is the only procedure open to the plaintiff not beset by confusion and perils. If it pays the tax to insolvent and inadequately bonded officers, a large sum of money may be lost. No prudent man would do it willingly, and equity should not require it. If it awaits the entry of the assessment and fails to appeal to the circuit court, its defense may be cut off by the plea of having failed to exhaust its administrative remedy. If it appeals to that court, or to the judge thereof, the judgment will be final and binding except on appeal to a higher court with appellate powers only. City of Hattiesburg v. First National Bank (D. C.) 8 F. Supp. 157.

The exigencies of the circumstances, such as insolvency of the collectors and the burden of a multiplicity of suits, practically deny it relief in the federal court except in equity. For these reasons the motion to dismiss the bill should be overruled, and the motion for an interlocutory injunction granted; but there is another ground of recent origin to deny the motion to dismiss the bill—the Declaratory Judgments Act, approved June 14, 1934 (28 USCA § 400). There is now no reason why the actual controversy over the liability of plaintiff's property to taxation may not be speedily adjudicated upon its merits. According to Borchard's work on Declaratory Judgments, just off the press, this act "has made judicial recourse as simple as administrative recourse, an end earnestly to be desired." Page 622. This case, which has con-

sumed considerably more than a year in a futile legal wrangle over remedies, illustrates the necessity of procedural reform, and is an ideal one in which to give recognition to the recent act of Congress. The plaintiff seeks relief from the financial peril of tax exactions by insolvent collectors acting without authority of law, and is entitled to a declaratory decree as to the validity of the asserted tax exemptions. For that reason the motion to dismiss the bill should be overruled without reference to what has been said upon the other questions.