62 So.3d 387 (2010)
3545 MITCHELL ROAD, LLC d/b/a Tupelo Trace Apartments and Pinecrest/Tupelo, L.P. d/b/a Tupelo Seniors Apartments, Appellants
v.
BOARD OF SUPERVISORS OF LEE COUNTY, MS and Mark Weathers, Lee County Tax Assessor, Appellees.
No. 2009-CA-00292-COA.
Court of Appeals of Mississippi.
June 29, 2010.
Rehearing Denied October 12, 2010.
James L. Martin, Madison, attorney for appellants.
Gary L. Carnathan, Tupelo, attorney for appellees.
EN BANC.
KING, C.J., for the Court:
¶ 1. Appellant 3545 Mitchell Road LLC d/b/a Tupelo Trace Apartments (Tupelo Trace) and Appellant Pinecrest/Tupelo, *388 L.P. d/b/a Tupelo Seniors Apartments (Pinecrest) (collectively, the Appellants) appeal the judgment of the Lee County Circuit Court, which affirmed the Lee County Board of Supervisors' reassessment of the Appellants' real property and the resulting increase in ad valorem taxes. On appeal, the Appellants challenge whether the Board properly reassessed and changed the amounts the Appellants owed in ad valorem taxes for the Tupelo Trace and Pinecrest properties, and they seek a refund of their overpayment of ad valorem taxes for 2007.[1] Finding no error, this Court affirms.

FACTS
¶ 2. Tupelo Trace owns and operates Tupelo Trace Apartments, and Pinecrest owns and operates Tupelo Seniors Apartments. Both Tupelo Trace and Pinecrest are residential apartment complexes consisting of 200 and 40 units, respectively and are designed to be "affordable rental housing" properties, as that term is defined by Mississippi Code Annotated section 27-35-50(4)(d)(i) (Rev.2006). Section 27-35-50(4)(d) sets out the method to be used to determine the "true value" of "affordable rental housing" for purposes of levying ad valorem taxes. It provides that for tax purposes the value of "affordable rental housing" shall be determined by the "actual net operating income attributable to the property, capitalized at a market value capitalization rate prescribed by the State Tax Commission that reflects the prevailing cost of capital for commercial real estate in the geographical market in which the affordable rental housing is located adjusted for the enhanced risk that any recorded land use regulations places on the net operating income from the property." In order to receive this benefit, the law requires that the property owner submit to the county tax assessor, by April 1 of each year, an accurate statement of the net operating income attributable to that property for the prior year.
¶ 3. The Appellants admit that in 2007, they failed to submit to the Lee County Tax Assessor the statements of the actual net operating income attributable to the properties for the immediately preceding year, as required to qualify for the special valuation method for assessing affordable rental housing property, as required by section 27-35-50(4)(d). The Assessor, failing to notice that the Appellants had not submitted the required statements of actual net operating income attributable to the properties, still assessed the properties using the special valuation method, and submitted the 2007 Land Roll to the Board for approval at its meeting held on July 3, 2007. The Assessor recommended to the Board the true value of all real and personal property situated in Lee County, Mississippi, for 2007. The 2007 Land Roll included recommended true values for Tupelo Trace and Pinecrest in the sums of $2,862,210 and $317,420, respectively. The Board accepted and adopted the 2007 Land Roll at its meeting held on August 13, 2007. Tupelo Trace and Pinecrest were subsequently assessed $43,529.98 and $4,843.67 in taxes, respectively.
¶ 4. On or about September 25, 2007, the Appellants submitted a written request to the Assessor asking for confirmation of the 2007 true values assessed to the apartment complexes. The Assessor confirmed and represented to Tupelo Trace and Pinecrest that their tax assessments would be based on a true value assessment of $2,862,210 and $317,420, respectively.
*389 ¶ 5. Later, the Assessor discovered that the Appellants had failed to submit statements of the actual net operating income attributable to the properties for the immediately preceding year to the Assessors's office on or before April 1, 2007, as required by section 27-35-50(4)(d). The Assessor then reassessed the subject properties using the ordinary method of valuation, rather than the special income-capitalization approach, which resulted in higher true-values for both properties than the original assessments. On or about November 8, 2007, the Assessor changed the 2007 true value assessment for Tupelo Trace and Pinecrest to $8,896,620 and $951,073, respectively. As a result, the Appellants were assessed $135,304.25 and $14,512.90, respectively, in taxes for 2007. The Appellants each paid their respective amount on or about January 17, 2008.
¶ 6. Due to the initial lack of notice to the Appellants regarding the increase in their assessments, on July 28, 2008, the Board, on its own motion, rescinded the increase for assessments for the Appellants' properties, and it asked the Board's clerk to notify the Appellants of the increases. The clerk notified the Appellants of the increases by letter, which advised the Appellants that if they objected to such increase, an objection must be filed no later than 10:00 a.m. on August 18, 2008. The Appellants submitted a written objection to the Board on August 6, 2008, objecting to the increase in the true value of their properties. However, the Appellants still failed to submit the statement of actual net operating income for the prior year as required by section 27-35-50(4)(d). On August 22, 2008, after reviewing sections 27-35-145 (Rev.2006), 27-35-147 (Rev. 2006), and 27-35-50(4)(d) of the Mississippi Code Annotated, the Board issued an order denying the Appellants' objections. The Appellants subsequently appealed to the Lee County Circuit Court on August 28, 2008.
¶ 7. By agreement of the parties, the case was tried on a written stipulation of facts, with exhibits, on January 16, 2009. On February 4, 2009, the circuit court entered an order denying the Appellants' appeal. Aggrieved, the Appellants now turn to this Court, seeking relief.

STANDARD OF REVIEW
¶ 8. The Mississippi Supreme Court has held that a review of whether appellants are entitled to an exemption presents a question of law, since the question "turns on both the construction of the statutory language and application of it to the facts of the instant case." Hattiesburg Area Senior Servs., Inc. v. Lamar County, 633 So.2d 440, 444 (Miss.1994). Since both of the parties in the case before us agreed to a stipulation of facts, this case involves no dispute of fact. For questions of law, this Court conducts a de novo review of the lower court's decision. Univ. of Miss. Med. Ctr. v. Hughes, 765 So.2d 528, 532 (¶ 13) (Miss.2000).

DISCUSSION
¶ 9. The Appellants argue that the circuit court erred in finding that the Board properly reassessed and increased the amount of ad valorem taxes owed on the subject properties, Tupelo Trace and Pinecrest. The Appellants also argue that the circuit court erred in finding that the Board properly changed the 2007 Land Roll assessments for the properties pursuant to section 27-35-147.
¶ 10. Section 27-35-50 of the Mississippi Code Annotated mandates that in order to assess most types of real property for purposes of ad valorem taxation, the Assessor must determine the true value of the property by using one or a combination *390 of three approaches: income-capitalization approach to value, the cost approach to value, or the market-data approach to value. See Miss.Code Ann. § 27-35-50(2) (Rev.2006). In the present case, the Appellants' properties fall under the "affordable rental housing," which is defined as:
residential housing consisting of one or more rental units, the construction and/or rental of which is subject to Section 42 of the Internal Revenue Code (26 USC 42), the Home Investment Partnership Program under the Cranston-Gonzalez National Affordable Housing Act (42 USC 12741 et seq.), the Federal Home Loan Banks Affordable Housing Program established pursuant to the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) of 1989 (Public Law 101-73), or any other federal, state or similar program intended to provide affordable housing to persons of low or moderate income and the occupancy and maximum rental rates of such housing are restricted based on the income of the persons occupying such housing.
Miss.Code Ann. § 27-35-50(4)(d)(i).[2] Pursuant to section 27-35-50(4)(d), such property must be appraised using only a specified income-capitalization approach developed by the Mississippi State Tax Commission, which provides a lower rate of ad valorem taxation for the property owner.[3] In order to be assessed under this formula and receive a lower tax rate for a given year, the owner of the affordable rental housing must, on or before April 1, provide the county tax assessor with a statement of the actual net operating income for the previous year. Miss. Code Ann. § 27-35-50(4)(d).
¶ 11. In the present case, the Assessor did not discover the Appellants' failure to submit the required information to the Assessor's office on or before April 1, 2007, in accordance with section 27-35-50(4)(d), until after the Board had approved the assessment rolls. At the February 8, 2008, Board meeting, the Assessor presented his recommendation to change the 2007 assessment of the Appellants' properties from $2,862,210 and $317,420 to $8,896,620 and $951,073, respectively. This increased amount reflected the Assessor's application of the ordinary valuation approach in establishing the true value of the properties, instead of the specialized approach available to property owners meeting the requirements of section 27-35-50(4)(d).
¶ 12. The Appellants agree that the Assessor and the Board have the authority to change an assessment after it has become final. However, the Appellants claim that this authority is not without limitations. Specifically, the Appellants claim that the Board's power to change, cancel, or decrease an assessment after the assessment roll becomes final is limited to the fourteen enumerated circumstances found in Mississippi Code Annotated section 27-35-143 (Rev.2006). The Appellants argue that the present situation does not fall under any of the fourteen circumstances in section 27-35-143. Therefore, they claim that the increase in the assessments of their properties was unlawful and should be rescinded.
¶ 13. However, we note that section 27-35-143(11) authorizes changes in assessments by the Board where lands have been assessed and incorrectly classified. We also note that section 27-35-147(4) provides that a board of supervisors may *391 increase an assessment after an assessment roll has been adopted "[w]hen lands or improvements thereon have been listed as exempt from taxation, but were subject to assessment and taxation on the preceding tax lien date."
¶ 14. The appellants argue the special methodology of establishing a true value for affordable rental housing in section 27-35-50(4)(d) is not tantamount to an exemption; they contend that the powers to exempt and the powers to determine special modes of valuation are separate and complimentary. However, this Court agrees with and affirms the circuit court's finding that section 27-35-50(4)(d) is an exemption because it provides a lower tax rate to the owners of affordable rental housing, versus a higher tax rate for owners of the same type property used in a different manner. We note that such an exemption is similar to the favorable treatment found in the homestead exemption in Mississippi Code Annotated section 27-33-3 (Rev.2006). The homestead exemption is not a complete exclusion from taxation; rather, it is a reduction in the amount of ad valorem taxes owed by the property owner. Miss. Code Ann. § 27-33-3.
¶ 15. We note that laws which grant tax exemptions are to be strictly construed against the exemption. Better Living Servs., Inc. v. Bolivar County, 587 So.2d 914, 917 (Miss. 1991) (citing Bd. of Supervisors., Warren County v. Vicksburg Hosp., 173 Miss. 805, 816, 163 So. 382, 385 (1935)). Since section 27-35-50 is an exemption statute, we find that the Assessor and Board were correct in utilizing sections 27-35-147(4) and 27-35-143(11) to correct the wrongfully classified property and to reassess the properties and increase the amounts owed in taxes by the Appellants. This issue is without merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE AND MYERS, P.JJ., ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, J. IRVING AND BARNES, JJ., NOT PARTICIPATING.
ROBERTS, J., Dissenting:
¶ 17. The majority affirms the judgment of the Lee County Circuit Court on the basis that the Lee County Board of Supervisors was statutorily authorized to increase the tax liability of both Tupelo Trace Apartments and Pinecrest Apartments (collectively the Appellants). According to the majority, the Board was authorized to do so because the tax-liability-valuation method applicable to affordable rental housing as set forth by Mississippi Code Annotated section 27-35-50(4)(d) (Rev.2006) is the legal equivalent of a tax exemption. With utmost respect for the majority, I cannot agree with the majority's conclusion. Therefore, I dissent.
¶ 18. The facts of this case are undisputed. During the Board's meeting on July 3, 2007, the Lee County Tax Assessor submitted Lee County's 2007 Land Roll. The 2007 Land Roll included recommended true values for the Appellants' properties. In determining the true values of the Appellants' properties, the Assessor apparently used the same figures that were used to determine the true value of the Appellants' properties for the 2006 fiscal year. That is, the Assessor never requested updated net income operating expenses from the Appellants in an effort to determine the 2007 true value of the Appellants' properties. Consequently, the *392 Appellants were unaware that they were obligated to provide updated net income operating expenses. It appears that the Assessor was, likewise, unaware that it was necessary to obtain updated net income operating expenses.
¶ 19. During the Board's August 13, 2007, meeting the Board met to equalize the tax roll. As a result, the Board accepted and adopted the Assessor's 2007 Land Roll. On September 25, 2007, the Appellants submitted a written request to the Assessor, asking him to confirm the 2007 true values that applied to their properties. The Assessor responded and confirmed the true value of the Appellants' 2007 tax assessments as approximately $2,860,000 and $320,000.
¶ 20. However, on November 8, 2007, after the Board had finally approved the tax rolls, the Assessor unilaterally determined that it was necessary to increase the 2007 true values of the Appellants' properties. The Assessor never notified the Appellants of his intent to increase their 2007 true value assessments to approximately $8,900,000 and $950,000. On January 17, 2008, the Appellants paid their newly determined 2007 ad valorem taxes of $135,304.25 and $14,512.90. Under the Assessor's prior true value assessment, the Appellants would have had 2007 ad valorem tax liabilities of $43,529.98 and $4,843.67. Under the revised true values, the Appellants' tax burden increased a total of $101,443.50which is $91,774.27 and $9,669.23, respectively.
¶ 21. The only issue is whether the Board was authorized to reassess the Appellants' ad valorem tax liability for the 2007 fiscal year after it and the Mississippi State Tax Commission had accepted and adopted the tax rolls for 2007. As the majority discusses, once a Board has accepted and adopted an Assessor's recommendation, that Board may only reassess tax liability under certain limited circumstances. According to the majority, the Board was authorized to reassess the Appellants' 2007 state ad valorem tax liability pursuant to Mississippi Code Annotated section 27-35-143(11) (Rev.2006) and/or Mississippi Code Annotated section 27-35-147(4) (Rev.2006).
¶ 22. Section 27-35-143(11)titled "Change of assessment in certain cases" provides as follows:
The board of supervisors of each county shall have power, upon application of the party interested, or by the assessor on behalf of such party, or otherwise as prescribed in Sections 27-35-145 through XX-XX-XXX, to change, cancel or decrease an assessment in the manner herein provided at any time after the assessment roll containing such assessment has been finally approved by the State Tax Commission, and prior to the last Monday in August next, under the following circumstances and no other:
. . . .
11. When lands have been assessed and incorrectly classified; or when buildings and improvements have been assessed which were not on the land[ ] at the preceding tax lien date; or where the buildings and improvements at the preceding tax lien date[ ] were exempt from assessment and taxation.
There was no evidence that the apartments had been incorrectly classified. They were, in fact, classified correctly by the Board. The undisputed evidence is that the Assessor merely reassessed the Appellants' ad valorem tax liabilities pursuant to the "ordinary method of valuation" rather than the "special income-capitalization approach." It is true that the Appellants failed to provide the necessary information on a timely basis. However, the Appellants were unaware of any such *393 obligation, and neither the Assessor nor the Board was aware that the Appellants were required to provide that information. Furthermore, neither the Assessor nor the Board requested the necessary information before final approval of the tax rolls. The failure to provide necessary documentation is not included among any of the circumstances in which a board may modify a taxpayer's ad valorem tax liability as set forth in section 27-35-143. In my opinion, an incorrect valuation calculation is not the equivalent of incorrect classification of property.
¶ 23. Additionally, the majority finds that the Board was authorized to reassess the Appellants' 2007 ad valorem tax liability based on section 27-35-147(4), which provides as follows:
The board of supervisors, upon its own motion, or upon notice from the tax assessor, the state tax commission, or other officer authorized to assess, or have assessed property escaping taxation, shall have power, at any time in the current year that an assessment roll is in force, to increase an assessment subject to approval as hereinafter provided, or to assess property or persons omitted from such roll or rolls under the following circumstances:
. . . .
(4) When lands or improvements thereon have been listed as exempt from taxation, but were subject to assessment and taxation on the preceding tax lien date.
¶ 24. The majority concludes that the "special income-capitalization approach" applicable to taxation of affordable rental housing "is an exemption because it provides for a lower tax rate to the owners of affordable rental housing, versus a higher tax rate for owners of the same type property used in a different manner." Respectfully, I interpret the majority opinion as defining an exemption as any taxation-calculation methodology or any other mechanism that results in a lower tax liability than the equivalent of the absolute maximum taxation rate allowable by law. I do not agree.
¶ 25. The term "exemption" is not defined by any Mississippi law. However, it is not an unfamiliar term. "In taxation, an exemption is an amount allowed as a deduction from adjusted gross income in arriving at taxable income." Black's Law Dictionary 572 (6th ed.1990). Here, the Assessor did not first deduct a particular portion of the Appellants' adjusted gross income before calculating their 2007 ad valorem tax liabilities. Instead, he initially calculated their value pursuant to the "special income-capitalization approach"apparently based on 2006 financial data which resulted in tax liabilities of $43,529.98 and $4,843.67 and subsequently calculated their value pursuant to the "ordinary method of valuation," which resulted in tax liabilities of $135,304.25 and $14,512.90. Using a different formula to calculate taxable value is not the legal equivalent of an "exemption."
¶ 26. Furthermore, the Mississippi Legislature has listed all general ad valorem tax exemptions in Mississippi Code Annotated section 27-31-1 through -117 (Rev.2006). The Legislature did not include the "special income-capitalization approach" for determining the tax liability of affordable rental housing within its listing of general exemptions. The Legislature also detailed all provisions regarding the homestead exemption to ad valorem taxation within Mississippi Code Annotated section 27-33-1 through79 (Rev.2006). Again, the Legislature omitted any mention of the "special income-capitalization approach" for determining the tax liability of affordable rental housing in the laws regarding the homestead exemption. I *394 collegially disagree that any formulaic approach that results in a lower tax assessment amounts to an "exemption."
¶ 27. According to the majority's logic, in each instance where the Mississippi Code provides less than the absolute maximum level of taxation, that in and of itself is an exemption regardless whether it is included in the provisions specifically classified as general exemptions or the homestead exemption. In other words, if a board finds that a taxpayer or a taxpaying entity could have been assessed at a higher rate under any circumstances, that board is authorized to reassess that tax liability because that taxpayer or taxpaying entity has received the benefit of an exemptioneven if the Legislature has not included the means that resulted in a lower tax rate among the laws that apply to exemptions. In effect, the majority finds that the Legislature has failed to correctly classify what it considers exemptions, because whether something qualifies as an exemption depends solely on whether a provision in any Mississippi law creates a lower tax liability.
¶ 28. The majority bolsters its conclusion by finding that using the "special income-capitalization approach" rather than the "ordinary method of valuation" is an exemption because it "is similar to the favorable treatment found in the homestead exemption . . . [which] is not a complete exclusion from taxation, but rather a reduction in the amount of ad valorem taxes owed by the property owner." With respect for the majority, I disagree.
¶ 29. The homestead exemption is a specified deduction from the assessed value of a qualifying dwelling. See Miss.Code Ann. § 27-33-3(1) (Rev.2006). That is not what occurred in this case. Furthermore, section 27-35-147(4) only applies if it is determined that "lands or improvements thereon have been listed as exempt from taxation, but were subject to assessment and taxation on the preceding tax lien date." None of the Appellants' properties were ever "listed as exempt from taxation." Instead, the Assessor assessed all of the Appellants' properties, but he used the "special income-capitalization approach" to establish value instead of the "ordinary method of valuation" to establish value.
¶ 30. In its brief, the Board notes that the American Heritage Dictionary, 474 (2d College Ed.) defines exemption as "the state of being free from an obligation or duty required of others." Additionally, the Board cited Clement v. Stone, 195 Miss. 774, 791, 15 So.2d 517, 522 (1943) for the concept that a property tax exemption is a "grant of immunity from tax upon property which persons generally are obligated to pay." However, that is an extreme oversimplification of the supreme court's decision in Clement.
¶ 31. In Clement, the supreme court stated as follows:
exemption from taxation has two meanings, one broad and the other narrow. In the broad sense whenever a tax is laid on property which does not apply to all property within the jurisdiction of the taxing authorities, the property not taxed may be said to be exempted. . . . In its narrower sense an exemption from taxation is the grant of immunity to particular persons or corporations or to persons or corporations of a particular class from a tax upon property or an excise which persons or corporations generally within the same taxing district are obligated to pay.
Id. (citation omitted). Thus, the supreme court did not solely define "exemption" as the Board suggests. In fact, the supreme court refused to find that there had been an exemption in Clement. Id. In so doing, the supreme court stated that "no exemption *395 from taxation will be created by implication." Id. (citation omitted). Contrary to the supreme court's decision in Clement, the majority finds, through implication, that the "special income-capitalization approach" that applies to affordable rental housing is actually an exemptiondespite the fact that the Legislature does not consider it to be an exemption.
¶ 32. To summarize this case, in 2005, the Legislature amended Mississippi Code Annotated section 27-35-50(4)(d) and specified that tax assessors were to determine the true value of affordable rental housing by using the appraisal procedure set forth in the State Tax Commission's land appraisal manuals. As the majority noted, the Legislature further specified that a tax assessor shall determine the true value of affordable rental housing by calculating as follows:
actual net operating income attributable to the property, capitalized at a market value capitalization rate prescribed by the State Tax Commission that reflects the prevailing cost of capital for commercial real estate in the geographical market in which the affordable rental housing is located[,] adjusted for the enhanced risk that any recorded land use regulations place on the net operating income from the property.
Miss.Code Ann. § 27-35-50(4)(d). The Appellants were required to provide the Assessoron or before April 1, 2007with an accurate statement of their actual net operating income attributable to their respective properties for the previous year. Id. The Appellants provided the Assessor with the necessary information to determine their tax liability for 2006. It appears that the Appellants were unaware of their continuing obligation to provide the necessary information on an annual basis. The Assessor apparently was also unaware of the Appellants' annual obligation, because he never notified the Appellants of their obligation or requested any additional information.
¶ 33. When the Board met to equalize the land roll during August 2007, the Board was fully authorized to correct any errors in those assessments. Miss.Code Ann. § 27-35-87 (Rev.2006). Had the Board been aware of the Assessor's oversight, the Board would have been authorized to order the Appellants to produce "books . . . and such other papers as [would] fully inform [it] as to the true value of the property to be assessed" at the August meeting in which the Board sat as an "equalization board." Miss.Code Ann. § 27-35-97 (Rev.2006). Had the Board requested that information and if the Appellants had failed to comply with that demand, the Appellants would have been precluded from objecting to any resulting assessment. Id. However, it is undisputed that the Board did not correct the Assessor's oversight. Afterward, the Board and the State Tax Commission finally approved Lee County's 2007 assessment rolls. See Miss.Code Ann. § 27-31-105 (Rev.2006); § 27-35-113 (Rev.2006). Based on the record, the Appellants' properties were properly valued pursuant to the "special income-capitalization approach" for affordable rental housing in 2006 and again in 2008. It was only during 2007 that the Board sought to collect an additional $100,000 in ad valorem taxes from the Appellants.
¶ 34. I cannot find that the circumstances that occurred in this case fall within any statutory provision in which modification of an assessment is authorized after final approval of the tax rolls by the Board and the State Tax Commission. Furthermore, I cannot agree with the majority's logic that the Appellants' properties were improperly classified or that any taxation rate other than the maximum taxation rate *396 allowable by law amounts to an "exemption." I would find that the circuit court erred when it held that the Board was authorized to reassess and substantially increase the Appellants' 2007 ad valorem tax liabilities. Accordingly, I would reverse the judgment of the circuit court and render judgment for the Appellants in the amount of their overpayment of ad valorem taxes for 2007.
GRIFFIS, J., JOINS THIS OPINION.
NOTES
[1] For clarity, we have combined both of the Appellants' issues on appeal, as well as the questions submitted within their brief, into one main issue.
[2] Both parties stipulate that the Appellants' properties fall under the "affordable rental housing" category defined in section 27-35-50(4)(d)(i).
[3] The Legislature amended 27-35-50 in 2005 to add (4)(d).